## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated,

        Plaintiff,

vs.

ORBIT ENERGY & POWER, LLC,

        Defendant.

Case No. 2:21-cv-00777

Magistrate Judge Carol Sandra Moore Wells

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

### I.      INTRODUCTION

Plaintiff Andrew Perrong ("Plaintiff") and Orbit Energy & Power, LLC ("Orbit Energy" or "Defendant") (Plaintiff and Orbit Energy are collectively referred to as the "Parties") have negotiated, and the Court preliminarily approved on March 7, 2022, a class action settlement of this Telephone Consumer Protection Act ("TCPA") case. (Doc. 29.) A copy of the Settlement is on file with the Court. (Doc. 28-1.) The Settlement requires the establishment of a $6,000,000 Settlement Fund to be distributed *pro rata* to Settlement Class Members who file a valid claim after payment of notice and administration costs (if approved), Plaintiff's Counsel fees and costs (if approved), and Service Payment to the Plaintiff (if approved).[1] There is no reverter in the Settlement Fund. The nearly 3,500 Settlement Class Members who filed a claim will each receive a cash payment from this fund of $1,097.58. *See* Declaration of Eric Schachter, Vice President for Settlement Administrator, AB Data, Ltd. ("AB Data Decl."), ¶ 14, attached hereto

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement"), filed at Doc. 28-1.

as Exhibit 1.)  This per claim payment amount is well within the range of (and often far exceeds) other TCPA class action settlements approved by courts in this Circuit and elsewhere. Indeed, for a negligent violation of the TCPA, the *maximum* individual damages permitted is $500. *See* 47 U.S.C. 227(c)(5). It is only if a Court exercises its discretion can that award be up to $1,500 for violations that were "knowing" or "willful". *Id.* As such, this settlement represents an excellent result for its participants.

The Parties' Settlement Agreement is now subject to final approval by the Court.  In accordance with the Court's Preliminary Approval Order, a Notice was sent via first class mail to identified Settlement Class Members, advising them of the proposed settlement.  (*See* AB Data Decl. ¶¶ 6-13.)  Notably, there were *no objections* to the settlement. *Id.*

The Settlement Agreement reflects a compromise of the Parties' positions for the purpose of resolving, without further litigation, all issues and claims relating to the allegations made in this Action on behalf of all members of the Class.  As demonstrated below, the Settlement negotiated by the Parties is fair, adequate, and reasonable and provides a substantial benefit to the Settlement Class.

The Parties request that the proposed order attached hereto as Exhibit 2, and filed with the Court previously, be entered.  The order will fully dispose of this matter.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the TCPA, which prohibits, *inter alia*, initiating more than one telephone call within any twelve-month period by or on behalf of the same entity to any consumer who has placed their number on the National Do Not Call Registry.  *See* 47 U.S.C. § 227(c)(5).  The TCPA provides a private cause of action to persons who receive such calls.  *Id.*

A.      **THE LITIGATION AND SETTLEMENT NEGOTIATIONS**

Plaintiff is a Pennsylvania resident whose telephone numbers have been called with unsolicited messages for years.  On February 19, 2021, Plaintiff filed a putative class action complaint in the United Stated District Court for the Eastern District of Pennsylvania against Defendant alleging claims for violations of the TCPA.

Since the filing of the original complaint, the Parties engaged in discovery and other litigation related to the claims at issue in the case and related insurance coverage matters. Plaintiff received and analyzed extensive information and data regarding Defendant's telemarketing sources and procedures, the dialing system used to make the calls to putative class members, the relationship between Defendant and its telemarketing vendor, as well as the targets of the telemarketing campaigns.  Plaintiff also reviewed and analyzed Defendant's insurance policies to identify and secure coverage for the claims of the Settlement Class.

The Parties mediated this case with the Honorable Thomas J. Rueter from JAMS.  Judge Rueter is a retired United States Magistrate Judge who previously served the United States District Court for Eastern District, including holding the position of Chief Magistrate Judge for four years.  Judge Rueter provided over a full day in person mediation session that included the participation of the Plaintiff, the Defendant, and a representative of the Defendant's insurance carrier.  The mediation resulted in the execution of a term sheet, which eventually formed the basis for the Settlement Agreement that was submitted to the Court in conjunction with the Motion for Preliminary Approval.  (Doc. 28.)

The Settlement preliminarily approved by the Court establishes a non-reversionary $6,000,000 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) Court-approved

attorneys' fees of one-third of the total amount of the Settlement Fund; (4) Plaintiff's out of pocket expenses of $24,930; and (5) a Court-approved Service Payment to the Class Representative of up to $15,000.

Each Settlement Class Member who submits a valid claim shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all Settlement Administrative Expenses, Incentive Awards, and fee awards are paid out of the Settlement Fund.

## III.    THE PROPOSED SETTLEMENT

### A.    THE SETTLEMENT CLASS

Pursuant to the Settlement Agreement, Plaintiff is seeking certification of the following Settlement Class for settlement purposes only:

> All persons in the United States that Orbit Energy called from February 19, 2017 through November 1, 2021 using the XenCall/ReadyMode dialing system (a) more than one time in a 12-month period to a telephone number while it was on the national or a state Do-Not-Call Registry (b) as a result of purchasing that telephone number from SalesGenie.

(Settlement Agreement ¶ 1.31.)  The proposed Settlement encompasses 193,618 individuals.

### B.    SETTLEMENT RELIEF

#### 1.    Class Member Relief: Settlement Fund

The proposed Settlement establishes a non-reversionary $6,000,000 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) attorneys' fees of one-third of the total amount of the Settlement Fund in addition to out of pocket expenses of $24,930, subject to Court approval; and (4) a Court-approved Service Payment to Plaintiff of up to $15,000.

Each Settlement Class Member who submits a valid claim shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all Settlement Administration Expenses,

Service Payment, and fee awards are paid out of the Settlement Fund.  If all the attorneys' fees, expenses, Service Payment, and Settlement Administration Expenses are approved as requested, Class Counsel estimate that the Settlement Class Member payment will be approximately $1,097.58 per claim.

### 2.        Class Representative Service Payment

If approved by the Court, the Plaintiff will receive a Service Payment of $15,000 from the Settlement Fund.  As discussed in Plaintiff's previously filed Motion for Award of Attorneys' Fees, Expenses, and Class Representative Award (Doc. 30), this award will compensate Plaintiff for his time and effort and for the risk he undertook in prosecuting this case as well as participating in discovery.  Notably, this motion was posted on the settlement website during the claim and objection period, and no objections were made.

### 3.        Attorneys' Fees and Costs

Class Counsel previously filed a motion for an award of attorneys' fees in the amount of one-third of the total amount of the Settlement Fund ($2,000,000.00), and out of pocket expenses of $24,930.  (Doc. 30.)  The requested award of attorneys' fees and costs will compensate Class Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the Action.  As required by the Settlement, the motion for attorneys' fees was posted on the settlement website so any Settlement Class Member could review it to make an informed decision about their participation or objection to the Settlement.

4.      **Remaining Funds**

Any amount remaining in the Settlement Fund after paying all approved Claim Forms, Settlement Administration Expenses, and any Fee Award and Service Payment will be distributed to the Court-approved *cy pres* recipient.  The Parties have proposed National Consumer Law Center as an appropriate recipient.  (Settlement Agreement ¶ 1.9.)

The National Consumer Law Center is a national organization well known for its consumer advocacy, particularly with respect to telemarketing issues.  *See, e.g.*, NATIONAL CONSUMER LAW CENTER, http://www.nclc.org/issues/robocalls-and-telemarketing.html (last visited May 25, 2022).

The National Consumer Law Center is both aligned with the interests of Class Members and advances the aims of the underlying litigation and would be a worthy *cy pres* recipient.

## C.      NOTICE AND SETTLEMENT ADMINISTRATION

The Settlement Administrator, AB Data, Ltd. ("AB Data"), caused the notice to be delivered via first class mail to Settlement Class Members in accordance with the Settlement Agreement and the Court's Preliminary Approval Order. AB Data Decl. ¶¶ 6-13. The Settlement Administrator also administered the Settlement Website, processed claim forms, and will issue checks to claimants.  The Settlement Administrator's records reflect that approximately 3,403 valid claims have been received, reviewed, and determined to be presumptively valid.  (*Id*. at ¶ 11.)  Subject to this Court's approval, Administration Expenses, which are set forth in great detail in the attached Declaration from the Settlement Administrator, will be paid from the Settlement Fund.  (Settlement Agreement ¶ 2.1.5.)

**D.      OPT-OUTS AND OBJECTIONS**

Settlement Class Members were given the opportunity to opt out of or object to approval in accordance with the Settlement Agreement.  (*Id.* ¶ 12-13.)  In total, only 5 Settlement Class Members opted out, and none objected to any aspect of the Settlement. *Id.*

**E.      RELEASE**

The release is appropriately narrowly tailored to this case involving violations like those alleged and is limited to those Settlement Class Members identified on the Class List, which was compiled of data exchanged in discovery.  In exchange for settlement benefits, the Settlement Class Members who did not timely opt out of the Settlement will release Orbit Energy from any and all claims against Orbit Energy.  (Settlement Agreement ¶¶ 1.25-1.27.)

## IV.      ARGUMENT

**A.      THE SETTLEMENT APPROVAL PROCESS**

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing."  MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.44 (1985).

The amendments to Rule 23(e)(2) that went into effect in December 2018 provide additional guidance, requiring courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief

including the method of processing class-member claims, if required, (iii) the terms of any proposed award of attorneys' fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other.  Plaintiff will address these factors as applicable, many of which overlap.  There is no governmental participant, and no agreement required to be identified under Rule 23(e)(3).

In addition, the Third Circuit has a strong judicial policy that encourages class settlements, especially those that are the product of arm's length negotiations.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd sub nom. Krell v. Prudential  Ins. Co. of Am.*, 148 F.3d 283, 317 (3d Cir. 1998); *see also In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits recognize the utility of … 'settlement classes' as a means to facilitate the settlement of complex nationwide class actions") (quotation and citation omitted).

## B.      THE CRITERIA FOR FINAL APPROVAL ARE SATISFIED

The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate" and should be finally approved.  The elements of this test— known as the "*Girsh* factors"—are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) (citing *Girsh*, 521 F.2d at 157).

As summarized below, these factors, as well as the factors contained in Rule 23(e)(2), demonstrate that this Settlement should be finally approved.

### 1.    Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.,* 264 F.3d 201, 233 (3d Cir. 2001) (internal citation and quotation marks omitted). "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *GMC*, 55 F.3d at 812. This factor undoubtedly weighs in favor of the Settlement here. In this litigation, the path from this point to a final judgment would be long and expensive. After discovery was completed, the Parties would have had to brief class certification, and the Court would have been forced to decide the strongly contested issue of whether a basis exists to certify a class for the purpose of establishing liability. If the Court determined that certification was warranted, then Orbit Energy presumably would have immediately exercised its right to seek interlocutory review of that certification order. If the certification order was upheld, additional discovery would have been taken (with attendant discovery-related motion practice). Thereafter, dispositive motions would have been filed by one or both of the Parties, and the Court would have been forced to adjudicate those motions, with additional appellate practice if such dispositive motions resulted in either entry of final judgment or a basis for interlocutory review. Depending on how the Third Circuit resolved any such appeals, the case might ultimately have gone to trial. Post-trial motions and additional appeals would have likely followed.

In fact, one of Class Counsel was involved in one of the only TCPA class actions to go through trial, and the amount of work done after class certification and through trial that would have resulted here is indicated in the work done in that case. *See Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333 (M.D.N.C. 2017) (more than 45 motions after a class certification

decision through the time of trial).  That case remains on appeal several years after the initial trial

was completed.  In short, litigating this Action would have proved lengthy, complex, and

expensive, thereby delaying (and potentially dissipating) any benefits that might have been

obtainable by Settlement Class Members.  The proposed Settlement permits the Court and the

Parties to avoid this significant expenditure of time and resources.  This factor strongly favors

preliminary approval of the proposed Settlement.

### 2.      The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the

settlement."  *Prudential*, 148 F.3d at 318.  Here, *no Settlement Class Member* has objected to any

aspect of the Settlement.  *See In re AT&T Corp. Sec. Litig.,* 455 F.3d 160 (3d Cir. 2006) (district

court did not abuse discretion in finding that second factor weighed strongly in favor of approval

where there were eight objections out of one million potential class members); *In re Rite Aid*

*Corp. Sec. Litig.,* 396 F.3d 305 (3d Cir. 2005) (noting that a similarly low level of objection is a

"rare phenomenon").  No members have objected and only 5 members have opted out.  (AB Data

Decl. ¶ 12s.)  The positive response of the Class weighs in favor of approval.

### 3.      The Stage of Proceedings and the Amount of Discovery Completed

The third *Girsh* factor "captures the degree of case development that class counsel [had]

accomplished prior to settlement.  Through this lens, courts can determine whether counsel had

an adequate appreciation of the merits of the case before negotiating."  *See GMC,* 55 F.3d at 813.

This inquiry has two aspects: legal and factual.  *Prudential*, 148 F.3d at 319.  The first

aspect is easily satisfied in this case, where the Parties engaged in extensive negotiations and

related legal analysis with the help of an experienced mediator with a robust background of

dealing with this type of case.  As a result, Class Counsel has a more than adequate appreciation

of the legal merits of the case.  The same is true from a factual perspective, which involves "an

inquiry into the type and amount of discovery the parties have undertaken." *Id.* Here, Plaintiff received and analyzed extensive information and data regarding Orbit Energy's telemarketing sources and procedures, the dialing system used to make the calls to putative class members, the relationship between Orbit Energy and its telemarketing vendor, as well as the targets of the telemarketing campaigns. Plaintiff also reviewed and analyzed Orbit Energy's insurance policies to identify and secure coverage for the claims of the Settlement Class. Class Counsel has a thorough appreciation of the facts—good and bad—which bear upon the merits of the claims in this litigation. In view of the foregoing, this factor strongly favors approval of the proposed Settlement.

### 4. The Risks of Establishing Liability and Damages

As to the fourth *Girsh* factor, as well as factor (C)(i) of Rule 23(3)(2) ("the costs, risks, and delay of trial and appeal"): "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GMC*, 55 F.3d at 814. "The risks surrounding a trial on the merits are always considerable." *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995); *see also, e.g., West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."). As to the risks of establishing damages: "Like the fourth factor, this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant*, 264 F.3d at 238-39 (internal citation and quotation marks omitted).

Plaintiff believes that the claims against Orbit Energy would be successful at trial. Nevertheless, these claims would face several difficult challenges if the litigation were to continue. If this Action proceeds, based on their experience with other TCPA actions and the

specifics of this Action, Class Counsel expects that Orbit Energy will aggressively raise multiple issues.

Class certification is far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117, at *3 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), *and Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) *and Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Even if the class were certified, the Plaintiff would still have a substantial issue to address regarding the amount of damages available from Orbit Energy and the ability to execute on any successful judgment. Orbit Energy's insurer set forth various arguments and defenses to both the availability of insurance coverage and the availability of applicable limits. The outcome of those issues could have severely impacted the ability of the Settlement Class to recover from Orbit Energy after trial. In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights. … Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see*

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Moreover, the narrative of Orbit Energy's telemarketing compliance efforts[2] could present a case for reduction of any damages awarded after trial, and some courts have applied this principle in the TCPA context.  For example, the court explained in *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501 (E.D. Mo. Sept. 7, 2017), before reducing the damages awarded in that TCPA class action lawsuit to $10 a call:

> Three courts have reduced damages awards in TCPA cases.  In *Texas v. American Blastfax, Incorporated*, plaintiff, the state of Texas, brought suit against defendants, American Blastfax, Incorporated and two of its officers and directors.  164 F.Supp.2d 892, 894 (W.D. Tex. 2001).  The district court held defendant Blastfax had violated the TCPA by sending unsolicited intrastate fax advertisements.  *Id.* at 894.  Defendants presented evidence the average cost of receiving an unwanted fax is seven cents per page.  *Id.* at 900.  Although it stated the TCPA provides for liquidated damages of $500 for each violation, the district court found it would be inequitable and unreasonable to award that amount for each violation.  *Id.*  Instead, the district court interpreted the provision as providing for "up to" $500 per violation.  *Id.*  The district court found a reasonable award was seven cents per violation, which it trebled because defendants' conduct was willful and knowing, for a total amount of $495,375.
>
> …
>
> The next case which reduced damages for TCPA violations is *Maryland v. Universal Elections, Incorporated*, 862 F.Supp.2d 457 (D. Md. 2012).  The state of Maryland brought a civil enforcement action against Universal Actions, Incorporated and two individuals, alleging defendants violated the TCPA by making 112,000 prerecorded telephone calls to residents on Election Day.  *Id.* at 459.  The district court found defendants violated the TCPA.  *Id.* at 463-

---

[2] Plaintiff concedes, for purposes of this motion only, that Defendant has presented evidence in discovery of a robust TCPA compliance policy.

464.  The base damages award could have been $34,000,000 and could have exceeded one hundred million dollars if trebled, because the violations were knowing.  *Id.* at 464.  The state of Maryland requested $10,424,550.  *Id.* at 465.  The district court awarded $1,000,000.  *Id.* at 466.  The district court reasoned "a $10 million penalty is disproportionate to the size of the company and the defendants' presumptive ability to pay."  *Id.*

...

The third case is *United States v. Dish Network, LLC*, No. 09-3073, 256 F. Supp. 3d 810, 2017 U.S. Dist. LEXIS 85543, 2017 WL 2427297 (C.D. Ill. Jun. 5, 2017).  Plaintiffs, the United States and the States of California, Illinois, North Carolina, and Ohio, alleged defendant, Dish Network, LLC, violated the TCPA, as well as several state laws and regulations, by placing telephone calls to telephone numbers on the do-not-call list. 2017 U.S. Dist. LEXIS 85543, [WL]at *1.  After a bench trial, the Central District of Illinois entered judgment in favor of the plaintiffs and against the defendant.  *Id.*  Plaintiffs asked for a damages award of $2.1 billion.  2017 U.S. Dist. LEXIS 85543, [WL] at *139.  The district court awarded civil penalties and statutory damages of $280,000,000, approximately 20 percent of the defendant's after-tax profits for 2016, finding this amount was "appropriate and constitutionally proportionate, reasonable, and consistent with due process."  *Id.*  The district court further reasoned "[t]he amount represents a significant penalty for the millions and millions of Do-Not-Call violations caused by Dish over years and years of careless and reckless conduct."  *Id.*  Finally, the district court stated "[t]he injury to consumers, the disregard for the law, and the steadfast refusal to accept responsibility require a significant and substantial monetary award."

*Id.* at *6-9.

While the Plaintiff was confident that he would ultimately prevail, this Action would continue to be heavily litigated by experienced class action counsel on behalf of Orbit Energy. As with any litigation, there are risks inherent in continuing to litigate, but considering that Plaintiff was able to obtain by settlement much of the relief sought in the litigation, it is in the Class's best interest to accept the relief provided in the Settlement now rather than to spend hundreds of thousands of dollars in fees and years of time in an attempt to obtain a marginally better result through litigation.

5.      **Risks of Maintaining Class Action Status Through Trial**

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action," *GMC*, 55 F.3d at 817, the court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. While for the reasons stated above Plaintiff firmly believes that this case is appropriate for class action treatment, regardless of any settlement, it is undeniable that class certification for settlement purposes removes some of the hurdles upon which some courts have denied certification of a litigation class. For example, manageability is not a concern with settlement classes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

What is certain is that any decision granting certification absent settlement would be subjected to the cost, delay, and the uncertainty of a Rule 23(f) appellate challenge, before the class could proceed to trial, and an appeal from any verdict or judgment in favor of the class would likewise follow. If a class could not be certified here, it would leave few, if any, class members with both the resources and financial incentive to chase a maximum $500 award for each statutory violation on their own, with the practical result of no recovery by anyone. *See Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original). The proposed Settlement provides a remedy now to all Settlement Class Members, rather than risking an uncertain result after years of expensive litigation.

6.      **Ability to Withstand a Greater Judgment**

The sixth *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240. This factor is particularly relevant here.

In a TCPA case such as this, the potential damages could bankrupt Orbit Energy.  Unlike a large public company with extensive financial resources, Orbit Energy is a regional, privately-held company.  As one court acknowledged in approving a TCPA settlement:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation....  *[C]omplete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt [the defendant]....  [The] recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added); *see also Reinhart v. Lucent Tech.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004) ("[T]he risk of nonpayment is 'acute' where a defendant lacks 'significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained.'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)).

The typical risks of nonpayment are accentuated in the current economic client where the country is recovering from the COVID-19 pandemic and the accompanying financial stress that affected nearly every business and individual in some form or fashion.  The uncertainty created by this environment makes the certainty created the Settlement achieved by Plaintiff's Counsel even more valuable and prudent for the Class.  This factor weighs heavily in favor of approval.

### 7.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The last two *Girsh* factors are usually considered together.  They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial."  *Prudential*, 148 F.3d at 322.  As Judge Becker explained in *GMC*, "[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest

hopes in exchange for certainty and resolution." 55 F.3d at 806. These factors overlap with Rule 23(e)(2)(C) (relief provided by the settlement is adequate, taking into account risks, distribution method, and attorneys' fees).

As explained above, the Settlement amount here is reasonable relative to the claims asserted and the risks inherent in bringing those claims to a successful judgment after trial. The Settlement amount and minimum per claimant payment of $1,097.58 is well above other TCPA settlements approved across the country. The following provides a summary overview of a sampling of per claimant recoveries in similar TCPA cases around the country that establishes the result achieved in this case is not just reasonable but exemplary when compared to outcomes negotiated in other class settlements:

| Case Name | Claimant Amount |
|---|---|
| *Schely v. Verde Energy USA, Inc.,* No. 2:17-cv-00887-WB (E.D. Pa. May 19, 2020) | $100.00 cash |
| *Amanda Hopkins v. Modernize Inc.,* No. 4:17-cv-40087-TSH (D. Ma. Oct. 9, 2019) | $26.00 cash |
| *Marengo v. Miami Resch. Assocs., LLC,* No. 1:17-cv-20459-KMW (S.D. Fla. July 20, 2018) | $130.00 cash |
| *Vasco v. Power Home Remodeling Group LLC,* No. 15-cv-4623, 2016 U.S. Dist. LEXIS 141044 (E.D. Pa. Oct. 12, 2016) | $27.00 cash |
| *Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) | $30.00 cash |
| *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) | $39.66 cash |
| *Rose v. Bank of Am. Corp.*, No. 11-cv-02390- EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) | $40.00 cash |
| *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) | $46.98 cash |
| *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) | $24.00 cash |
| *Manoucherhi v. Styles for Less, Inc.,* Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) | $10.00 cash (or $15.00 voucher) |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261 (S.D. Cal. Feb. 20, 2013) | $12.97 cash (or $17.29 voucher) |
| *Estrada v. iYogi, Inc.*, No. 2:13-01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) | $40.00 cash |
| *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS (W.D. Wash. Nov. 5, 2012) | $40.00 cash (or $80.00 voucher) |

| Case Name | Claimant Amount |
|---|---|
| *Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM (S.D. Fla. 2019) | $5.00 cash |
| *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893 (N.D. Cal. 2010) | $175.00 cash |
| *Goldschmidt v. Rack Room Shoes, Inc.*, No. 1:18-cv-21220-KMW (S.D. Fla. 2019) | $5.00 cash (and $10.00 voucher) |
| *Poirier v. CubaMaxTravel, Inc.*, No. 1:18-cv-23240-CMA (S.D. Fla. 2018) | $7.00 cash |
| *Weinstein v. The Timberland Co.*, No. 06-cv-00484 (N.D. Ill. 2008) | $150 cash |
| *Mohamed v. Off Lease Only, Inc.*, No. 1:15-cv-23352-MGC (S.D. Fla. 2019) | $50.00 cash |

And the proposed method of distributing relief and processing claims is effective and equitable. Fed. R. Civ. P. 23(e)(2)(C). To participate in the Settlement, Settlement Class Members were only required to submit simple claim forms. They can participate in the benefits of the Settlement regardless of whether that Settlement Class Member retained calling records or any other proof related to receipt of calls that violated the TCPA. Payments to claimants will be sent after final approval, and all claimants will receive an equal amount. *See* Fed. R. Civ. P. 23(e)(2)(D) ("the proposal treats class members equitably relative to each other").

The terms of the proposed attorneys' fees were disclosed in the Class Notice and are well in line with fees in other cases. Attorneys' fees awarded will be paid at the same time Settlement Class Members are paid.

### 8. The Class Representative and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the Class Representative and Class Counsel have adequately represented the Class. For the reasons stated in the Plaintiff's memorandum in support of preliminary approval, Doc. 28 at pp. 10-11, this requirement is satisfied. Plaintiff's interests are aligned with those of the Class, and he has served the Class's

interests in this litigation and in obtaining this Settlement.  And Class Counsel are experienced TCPA litigators.  (Class Counsel Decl., Doc. 28-2.)

      **9.**      **The Proposal Was Negotiated at Arm's Length**

Rule 23(e)(2)(B) instructs the Court to consider whether the proposed settlement was negotiated at arm's length.

Here, the Parties reached the Settlement through formal mediation sessions with a highly respected, independent mediator, the Honorable Thomas J. Rueter (Ret.) of JAMS.  Prior to their sessions, the Parties prepared memoranda and exchanged information relevant to settlement negotiations.  The negotiations were substantive and included extensive discussions about the merits of Plaintiff's legal claims and Orbit Energy's defenses.

The negotiations continued for weeks after being able to reach a resolution during the initial mediation session with Judge Rueter.  The prolonged, hard-fought, and arm's length negotiations between experienced attorneys for both sides and the result for the Settlement Class are all testaments to the non-collusive nature of the Settlement.  And "the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."  *In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) (citation omitted).

The "arm's-length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of approval.

**C.**      **CLASS MEMBERS WERE SENT PROPER NOTICE**

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' right to opt out or object.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

306, 315 (1950).  The notice process that was successfully implemented in this case more than

satisfied all requirements.  As previously approved by the Court, the Parties implemented a

Notice Plan including Postcard Notice and publication of a Long-Form Notice on the Settlement

Website, which the Postcard Notice also directs Settlement Class Members to.  The language of

the Postcard Notice and Long-Form Notice was negotiated and agreed to by the Parties and

approved by the Court prior to being disseminated.  The proposed notices were written in simple

terminology and included: (1) a description of the Class; (2) a description of the claims asserted

in the class actions; (3) a description of the Settlement; (4) the deadlines for filing a Claim Form

and/or for exercising the right to opt out (including limitation on the opt-out right); (5) the names

of counsel for the Class; (6) the fairness hearing date; (7) an explanation of eligibility for

appearing at the fairness hearing; and (9) the deadline for filing objections to the Settlement.

(AB Data Decl. Ex. C.)

The Settlement Administrator utilized a set of reliable and robust databases to initially

compile addresses to provide Postcard Notice to as many Settlement Class Members as possible.

(AB Data Decl. ¶ 7.) Indeed, through this process notice was successfully delivered to 98% of

the class. *Id.* at ¶ 8. The notice accomplished by the individual notice and media plan far exceeds

established due process requirements for class notice. *See* Federal Judicial Center, Judges' Class

Action Notice and Claims Process Checklist and Plain Language Guide (2010), *available at*

https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target

audience of 70-95%.); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL

5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class

notice instructs that class notice should strive to reach between 70% and 95% of the class.").

Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also* MANUAL FOR COMPLEX LITIGATION, *supra*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 704 (7th Cir. 2014), citing *United States Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

The Notice that was previously preliminarily approved by this Court and disseminated to the Settlement Class satisfies these criteria.  The Notice is clear, straightforward, and provides persons in the Settlement Class with enough information to evaluate whether to participate in the Settlement.  The Notice Plan constituted the best notice practicable under the circumstances, provided due and sufficient notice to the Settlement Class, and fully satisfied the requirements of due process and Federal Rule of Civil Procedure 23.

## D.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Settlement Class meets all of the requirements for certification under Rule 23.  There are no significant factual or legal differences among Class Members—all were subject to illegal telemarketing, and all are subject to the protections of the TCPA.  For the reasons set forth more fully in the motion for preliminary approval (Doc. 28), which have not changed, all of the Rule's requirements are met in the Settlement Class.  Plaintiff therefore requests that the Court finally certify the Settlement Class for settlement purposes.

## V.     CONCLUSION

The proposed class action Settlement is fair, reasonable, adequate, and well within the permissible range of possible judicial approval.  It should, therefore, be approved in all respects. A proposed Final Approval Order is attached as <u>Exhibit 2</u>. A proposed final judgment is attached as <u>Exhibit 3</u>.

Dated: May 27, 2022

Respectfully submitted,

**/s/ Anthony I. Paronich**
Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
E-mail: anthony@paronichlaw.com

Joseph F. Murray (327025)
Brian K. Murphy (admitted *pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murray@mmmb.com
          murphy@mmmb.com

*Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I, hereby certify that on May 27, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

**/s/ Anthony I. Paronich**